FILED

2010 OCT -7  PM 2: 49

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY _____

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

June 2010 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>            v.<br><br>POGOS SATAMYAN,<br>VACHAGAN DISHCHIAN, aka<br>   "Vacho,"<br>VAHE DISCHIAN,<br>ANDRANIK SATAMYAN, aka<br>   "Andy,"<br>HAROUTYOUN DISHCHIAN, aka<br>   "Harout,"<br>NICOLAE CANDU,<br>VITALINA SHCHERBYAK, and<br>NIKOLAY AGISHEV,<br><br>            Defendants. | CR 10-   **CR10 1123**<br><br>I N D I C T M E N T<br><br>[18 U.S.C. § 1349: Conspiracy<br>to Commit Bank Fraud; 18<br>U.S.C. § 1956(h): Conspiracy<br>to Launder Monetary<br>Instruments; 18 U.S.C. §§ 1956<br>(a)(1)(B)(i), 1956(a)(3)(B):<br>Money Laundering; 18 U.S.C.<br>§ 1344(1): Bank Fraud; 18<br>U.S.C. § 1028A: Aggravated<br>Identity Theft; 18 U.S.C. § 2:<br>Aiding and Abetting and<br>Causing an Act to be Done; 28<br>U.S.C. § 2461(c); 18 U.S.C.<br>§ 981(a)(1) (C); 18 U.S.C.<br>§ 982; and 21 U.S.C. § 853:<br>Criminal Forfeiture] |

The Grand Jury charges:

## COUNT ONE

[18 U.S.C. § 1349]

I.  INTRODUCTION

At all times relevant to this Indictment:

CHM:chm

<u>Defendants</u>

1.   Defendant POGOS SATAMYAN assisted in the handling of funds derived from the operation of fraudulent medical clinics in the Central District of California and elsewhere that sought reimbursement from the Medicare health care benefit program ("Medicare") for services purportedly rendered to patients with coverage under that program.

2.   Defendant VACHAGAN DISHCHIAN, also known as ("aka") "Vacho" (defendant "VACHAGAN DISHCHIAN"), was a cousin of defendant POGOS SATAMYAN and assisted in the handling of funds derived from the operation of fraudulent medical clinics in the Central District of California and elsewhere that sought reimbursement from Medicare for services purportedly rendered to patients with coverage under that program.

3.   Defendant VAHE DISCHIAN was a cousin of defendant POGOS SATAMYAN and the brother of defendant VACHAGAN DISHCHIAN and assisted in the handling of funds derived from the operation of fraudulent medical clinics in the Central District of California and elsewhere that sought reimbursement from Medicare for services purportedly rendered to patients with coverage under that program.

4.   Defendant ANDRANIK SATAMYAN, aka "Andy" (defendant "ANDY SATAMYAN"), was a cousin of defendants VACHAGAN DISHCHIAN and VAHE DISCHIAN and the younger brother of defendant POGOS SATAMYAN and assisted defendants POGOS SATAMYAN, VACHAGAN DISHCHIAN, and VAHE DISCHIAN in laundering money derived from the fraudulent medical clinics.

5.   Defendant HAROUTYOUN DISHCHIAN, aka "Harout" (defendant

"HAROUT DISHCHIAN"), was the father of defendants VACHAGAN DISHCHIAN and VAHE DISCHIAN and the uncle of defendants POGOS SATAMYAN and ANDY SATAMYAN, and he assisted defendants POGOS SATAMYAN, VACHAGAN DISHCHIAN, and VAHE DISCHIAN in laundering money derived from the fraudulent medical clinics.

6.    Defendant NICOLAE CANDU ("defendant CANDU") was a foreign national temporarily residing in the United States who helped others known and unknown to the Grand Jury in setting up fraudulent medical clinics and related fraudulent bank accounts and P.O. boxes.

7.    Defendant VITALINA SHCHERBYAK ("defendant SHCHERBYAK") was a foreign national temporarily residing in the United States who helped others known and unknown to the Grand Jury in setting up fraudulent medical clinics and related fraudulent bank accounts and P.O. boxes.

8.    Defendant NIKOLAY AGISHEV ("defendant AGISHEV") was a foreign national temporarily residing in the United States who helped others known and unknown to the Grand Jury in setting up fraudulent medical clinics and related fraudulent bank accounts and P.O. boxes.

                    The Medicare Program

9.    Medicare was a federal health care benefit program operated by the United States Department of Health and Human Services ("HHS").

10.   Medicare provided reimbursement for medical care to persons aged sixty-five years and older and to certain disabled persons.  Persons receiving Medicare insurance benefits were referred to as "Medicare beneficiaries."

11.  Medicare beneficiaries were issued beneficiary identification cards that certified eligibility for the Medicare program and identified them by a unique beneficiary number.

12.  The federal government contracted with private companies, known as Medicare service providers, to administer Medicare.  Medicare service providers made payments to authorized health care providers to reimburse them for medical services provided to Medicare beneficiaries for certain types of medically necessary treatments, tests, equipment, and supplies.

13.  To receive reimbursement for services or products provided to Medicare beneficiaries, the provider had to enroll in the Medicare program by completing a Medicare Enrollment Application which required the applicant to supply a medical doctor's name, Social Security number, and date of birth and to be signed under penalty of perjury.  New providers also often complete Electronic Funds Transfer Agreements.

14.  Once enrolled in the program, Medicare required that providers of medical services, such as physicians, submit claims to the Medicare service provider to receive reimbursement for medical services and products that they provided to beneficiaries.  Medicare paid the claims submitted by remitting funds to the provider either by mailing a check or by electronic funds transfer ("EFT") into the provider's bank account.

<u>Financial Institutions</u>

15.  At all times relevant hereto, Bank of America, JP Morgan Chase (doing business as Washington Mutual Bank) ("WAMU"), U.S. Bank, Wachovia Bank, Chase Bank, East West Bank, and Wells Fargo Bank were financial institutions whose deposits were

4

1   insured by the Federal Deposit Insurance Corporation.

2   II.  OBJECT OF THE CONSPIRACY

3        16.  Beginning on a date unknown to the Grand Jury, and

4   continuing through on or about October 13, 2010, in Los Angeles

5   County, within the Central District of California, and elsewhere,

6   defendants POGOS SATAMYAN, VACHAGAN DISHCHIAN, VAHE DISCHIAN,

7   HAROUT DISHCHIAN, ANDY SATAMYAN, CANDU, SHCHERBYAK, AGISHEV, and

8   others known and unknown to the Grand Jury, knowingly combined,

9   conspired, and agreed to commit an offense against the United

10  States, namely, to knowingly and with intent to defraud execute a

11  scheme to defraud a financial institution as to material matters,

12  in violation of Title 18, United States Code, Section 1344(1).

13  III. MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE

14       ACCOMPLISHED

15       17.  The object of the conspiracy was carried out and to be

16  carried out, in substance, as follows:

17       18.  Coconspirators known and unknown to the Grand Jury

18  would obtain stolen identifying information, including names,

19  Social Security numbers, and dates of birth, of actual medical

20  doctors.

21       19.  Using the stolen physician identities, defendants

22  CANDU, SHCHERBYAK, AGISHEV, and others known and unknown to the

23  Grand Jury, would submit a Medicare Enrollment Application to

24  Medicare to become an approved Medicare provider.

25       20.  Defendants CANDU, SHCHERBYAK, AGISHEV, and others known

26  and unknown to the Grand Jury, would open bank accounts into

27  which Medicare would eventually transfer the money paid on

28  fraudulent Medicare reimbursement claims.  These bank accounts

were opened in either the name of the physician whose identity had been stolen, in the name of a coconspirator, or in the name of an entity that purported to be a dba of the physician ("the fraudulent bank accounts").

21.  Coconspirators known and unknown to the Grand Jury would obtain lists of stolen identifying information for approved Medicare beneficiaries.

22.  Once approved by Medicare, coconspirators known and unknown to the Grand Jury would submit fraudulent claims to Medicare for health care benefits, items, and services allegedly provided to Medicare beneficiaries whose identities had previously been stolen when, in reality, the Medicare beneficiaries were never seen or treated.

23.  Medicare would then pay some portion of the fraudulent claims submitted and transmit the funds, usually by electronic funds transfer ("EFT"), directly into the fraudulent bank accounts.

24.  Coconspirators known and unknown to the Grand Jury would monitor the fraudulent bank accounts to determine when Medicare funds were received into the accounts.

25.  Defendants POGOS SATAMYAN, VACHAGAN DISHCHIAN, VAHE DISCHIAN, HAROUT DISHCHIAN, and ANDY SATAMYAN, and others known and unknown to the Grand Jury, would then launder the funds deposited by Medicare into the fraudulent bank accounts by forging the signature of the alleged account holder and then delivering the signed checks to a confidential informant working on behalf of the Federal Bureau of Investigation ("the CI"), who would, in turn, cash the checks in amounts specified by

6

1  defendants POGOS SATAMYAN, VACHAGAN DISCHCIAN, and VAHE DISCHIAN,

2  and return the proceeds in cash, less a fee, to defendants.

3      26.  Defendants assisted in the handling of funds derived

4  from the operation of the eight fraudulent medical clinics listed

5  below and those eight clinics submitted to Medicare a total of

6  approximately $17,616,344.19 in fraudulent claims on which claims

7  Medicare paid approximately $7,956,737.54.

8  IV.  OVERT ACTS

9      27.  In furtherance of the conspiracy, and to accomplish its

10 object, defendants POGOS SATAMYAN, VACHAGAN DISHCHIAN, VAHE

11 DISCHIAN, HAROUT DISHCHIAN, ANDY SATAMYAN, CANDU, SHCHERBYAK,

12 AGISHEV, together with others known and unknown to the Grand

13 Jury, committed and willfully caused others to commit the

14 following overt acts, among others, in the Central District of

15 California and elsewhere:

                    Endeavor Diagnostics, Inc.

16

17     Overt Act No. 1:

18     On or about January 16, 2008, defendant CANDU signed a

19 month-to-month lease for office space at 15904 Strathern Street,

20 Suite 19, Van Nuys, California, that purported to be the practice

21 location of Endeavor Diagnostics, Inc. but in reality was an

22 empty office.

23     Overt Act No. 2:

24     On or about January 18, 2008, an unidentified coconspirator

25 opened a bank account at WAMU under the names of defendant CANDU

26 and Endeavor Diagnostics, Inc.

27     Overt Act No. 3:

28     On or about May 2, 2008, an unidentified coconspirator

submitted or caused to be submitted a Medicare Enrollment Application to Medicare under the name of defendant CANDU and identified defendant CANDU as president of Endeavour Diagnostics Inc.

Overt Act No. 4:

On or about February 12, 2009, defendant HAROUT DISHCHIAN hand delivered to the CI a pre-signed checkbook for the Endeavor Diagnostics, Inc. checking account at WAMU.

Overt Act No. 5:

On or about February 17, 2009, defendant VACHAGAN DISHCHIAN telephoned the CI and gave the CI instructions to cash one or more checks drawn on the Endeavor Diagnostics, Inc. checking account at WAMU.

Overt Act No. 6:

On or about February 19, 2009, an unidentified coconspirator submitted and caused to be submitted a claim to Medicare for services purportedly performed on November 27, 2007 by Endeavor Diagnostics, Inc. for R.G.

Overt Act No. 7:

On or about February 20, 2009, defendant VACHAGAN DISHCHIAN telephoned the CI and gave the CI instructions to cash one or more checks drawn on the Endeavor Diagnostics, Inc. checking account at WAMU.

Overt Act No. 8:

On or about February 26, 2009, defendant POGOS SATAMYAN instructed the CI to deliver $37,000 in cash to H.B. that had been accumulated by cashing checks drawn on the Endeavor Diagnostics, Inc. checking account at WAMU.

Overt Act No. 9:

On or about March 3, 2009, defendant VAHE DISCHIAN, along with defendants VACHAGAN DISHCHIAN and ANDY SATAMYAN, met with the CI, and defendant ANDY SATAMYAN obtained approximately $104,000 in cash from the CI that had been accumulated by cashing checks drawn on the Endeavor Diagnostics, Inc. checking account at WAMU.

Overt Act No. 10:

On or about March 5, 2009, defendant VACHAGAN DISHCHIAN telephoned the CI and instructed the CI to cash one or more checks drawn on the Endeavor Diagnostics, Inc. checking account at WAMU.

Overt Act No. 11:

On or about April 6, 2009, an unidentified coconspirator submitted or caused to be submitted a Medicare Enrollment Application to Medicare under the name of R.J.F., M.D. dba Endeavour Diagnostics Inc.

Overt Act No. 12:

On or about June 17, 2009, an unidentified coconspirator submitted and caused to be submitted a claim to Medicare for services purportedly performed on April 22, 2009 by Endeavor Diagnostics, Inc. dba R.J.F. for L.J.

Overt Act No. 13:

On or about June 25, 2009, defendant HAROUT DISHCHIAN hand delivered to the CI a pre-signed checkbook for the Endeavor Diagnostics, Inc. checking account at Wachovia.

//

//

T.F.B., M.D.

Overt Act No. 14:

On or about April 17, 2008, an unidentified coconspirator opened a bank account at Bank of America in the name of T.F.B., M.D.

Overt Act No. 15:

On or about July 30, 2008, an unidentified coconspirator submitted or caused to be submitted a Medicare Enrollment Application to Medicare under the name of T.F.B., M.D.

Overt Act No. 16:

On or about September 25, 2008, defendant POGOS SATAMYAN hand delivered to the CI a pre-signed checkbook for the T.F.B, M.D. checking account at Bank of America.

Overt Act No. 17:

On or about September 30, 2008, defendant POGOS SATAMYAN telephoned the CI and gave the CI instructions to cash one or more checks drawn on the T.F.B., M.D. checking account at Bank of America.

Overt Act No. 18:

On or about October 9, 2008, an unidentified coconspirator submitted and caused to be submitted a claim to Medicare for services purportedly performed on August 8, 2008 by T.F.B., M.D. for A.E.

Overt Act No. 19:

On or about October 14, 2008, defendant POGOS SATAMYAN obtained $50,000 in cash from the CI that had been accumulated by cashing checks drawn on the T.F.B., M.D. checking account of Bank of America.

10

1  Overt Act No. 20:

2  On or about October 28, 2008, defendant POGOS SATAMYAN

3  obtained $50,000 in cash from the CI that had been accumulated by

4  cashing checks drawn on the T.F.B., M.D. checking account of Bank

5  of America.

6  HB Gutstein & Co.

7  Overt Act No. 21:

8  On or about March 2, 2009, an unidentified coconspirator

9  submitted or caused to be submitted a Medicare Enrollment

10 Application to Medicare under the name of H.B.G., M.D. dba HB

11 Gutstein & Co.

12 Overt Act No. 22:

13 On or about June 17, 2009, an unidentified coconspirator

14 submitted and caused to be submitted a claim to Medicare for

15 services purportedly performed on April 21, 2009 by HB Gutstein &

16 Co. for R.G.

17 Overt Act No. 23:

18 On or about July 6, 2009, an unidentified coconspirator

19 opened a bank account at Wells Fargo Bank in the names of

20 defendant SHCHERBYAK and HB Gutstein & Co.

21 Overt Act No. 24:

22 On or about July 9, 2009, defendant VACHAGAN DISHCHIAN hand

23 delivered an unnumbered check from the Wells Fargo Bank checking

24 account of HB Gutstein & Co. to the CI.

25 Overt Act No. 25:

26 On or about July 28, 2009, defendant VAHE DISCHIAN hand

27 delivered a pre-signed checkbook from the Wells Fargo Bank

28 checking account of HB Gutstein & Co. to the CI.

1   Overt Act No. 26:

2       On or about July 29, 2009, defendant VACHAGAN DISHCHIAN

3   telephoned the CI to give the CI instructions to cash one or more

4   checks from the Wells Fargo Bank checking account of HB Gutstein

5   & Co.

6   Overt Act No. 27:

7       On or about August 27, 2009, defendant VAHE DISCHIAN

8   obtained approximately $269,000 in cash from the CI, which

9   represented proceeds from checks the CI had cashed, including

10  proceeds from checks drawn on the Wells Fargo Bank checking

11  account of HB Gutstein & Co.

12                       Sonic Labzone Inc.

13  Overt Act No. 28:

14      On or about September 19, 2007, an unidentified

15  coconspirator opened a bank account at WAMU in the names of

16  defendant AGISHEV and Sonic Labzone Inc.

17  Overt Act No. 29:

18      On or about April 28, 2009, an unidentified coconspirator

19  submitted or caused to be submitted a Medicare Enrollment

20  Application to Medicare under the name of D.W.B., M.D. dba Sonic

21  Labzone Inc.

22  Overt Act No. 30:

23      On or about August 27, 2009, defendant VAHE DISCHIAN hand

24  delivered two completed checks drawn on the Chase Bank checking

25  account of Sonic Labzone Inc. to the CI.

26  Overt Act No. 31:

27      On or about August 31, 2009, an unidentified coconspirator

28  submitted and caused to be submitted a claim to Medicare for

                              12

services purportedly performed on July 21, 2009 by Sonic Labzone Inc. for A.E.

Overt Act No. 32:

On or about September 16, 2009, defendant POGOS SATAMYAN obtained approximately $341,000 in cash from the CI, which represented proceeds from checks the CI had cashed, including proceeds from checks drawn on the Chase Bank checking account of Sonic Labzone Inc.

Hwy Clinical Laboratory Services Inc.

Overt Act No. 33:

On or about September 21, 2007, an unidentified coconspirator opened a bank account at U.S. Bank in the names of defendant AGISHEV and Hwy Clinical Laboratory Services Inc.

Overt Act No. 34:

On or about May 12, 2009, an unidentified coconspirator submitted or caused to be submitted a Medicare Enrollment Application to Medicare under the name of D.A.P., M.D. dba Hwy Clinical Laboratory Services Inc.

Overt Act No. 35:

On or about August 20, 2009, an unidentified coconspirator submitted and caused to be submitted a claim to Medicare for services purportedly performed on June 6, 2009 by Hwy Clinical Laboratory Services Inc. dba Fertility Center of California for R.G.

Overt Act No. 36:

On or about August 27, 2009, defendant VAHE DISCHIAN hand delivered a completed check drawn on the U.S. Bank checking account of Hwy Clinical Laboratory Services Inc. ("Hwy Clinical")

13

1    to the CI.

2    <u>Overt Act No. 37</u>:

3    On or about August 27, 2009, defendant VACHAGAN DISHCHIAN

4    telephoned the CI to give instructions to cash one or more checks

5    previously delivered by defendant VAHE DISCHIAN.

6    <u>Overt Act No. 38</u>:

7    On or about September 3, 2009, defendant POGOS SATAMYAN

8    obtained approximately $204,000 in cash from the CI, which

9    represented proceeds from checks the CI had cashed, including

10   proceeds from checks drawn on the U.S. Bank checking account of

11   Hwy Clinical Lab.

12   <u>Overt Act No. 39</u>:

13   On or about September 16, 2009, defendant POGOS SATAMYAN

14   obtained approximately $341,000 in cash from the CI, which

15   represented proceeds from checks the CI had cashed, including

16   proceeds from checks drawn on the U.S. Bank checking account of

17   Hwy Clinical Lab.

18                              <u>Genassist Inc.</u>

19   <u>Overt Act No. 40</u>:

20   On or about May 7, 2009, an unidentified coconspirator

21   opened a bank account at East West Bank in the names of defendant

22   SHCHERBYAK and Genassist Inc.

23   <u>Overt Act No. 41</u>:

24   On or about June 3, 2009, an unidentified coconspirator

25   submitted or caused to be submitted a Medicare Enrollment

26   Application to Medicare under the name of R.L.S., M.D. dba

27   Genassist Inc.

28   //

                                   14

1   Overt Act No. 42:

2       On or about July 6, 2009, defendant VACHAGAN DISHCHIAN told

3   the CI that defendant VAHE DISCHIAN would bring the CI a

4   checkbook.

5   Overt Act No. 43:

6       On or about July 7, 2009, defendant VAHE DISCHIAN met in

7   person with the CI and gave the CI a checkbook with pre-signed

8   checks from the Genassist Inc. checking account at East West Bank

9   and instructed the CI to write a check in a small amount.

10  Overt Act No. 44:

11      On or about July 10, 2009, defendant VACHAGAN DISHCHIAN

12  telephoned the CI and gave the CI instructions to cash one or

13  more checks from the Genassist Inc. East West Bank account.

14  Overt Act No. 45:

15      On or about July 21, 2009, an unidentified coconspirator

16  submitted and caused to be submitted a claim to Medicare for

17  services purportedly performed on June 22, 2009 by Genassist Inc.

18  for R.G.

19  Overt Act No. 46:

20      On or about July 28, 2009, defendant VAHE DISCHIAN obtained

21  approximately $109,000 in cash from the CI that had been

22  accumulated by cashing checks drawn on the Genassist Inc.

23  checking account of East West Bank.

24  Overt Act No. 47:

25      On or about August 4, 2009, defendant VAHE DISCHIAN obtained

26  approximately $117,000 in cash from the CI that had been

27  accumulated by cashing checks drawn on the Genassist Inc.

28  checking account of East West Bank.

1    <u>Overt Act No. 48</u>:

2        On or about August 10, 2009, defendant VACHAGAN DISHCHIAN

3    telephoned the CI and gave the CI instructions to cash one or

4    more checks from the Genassist Inc. East West Bank checking

5    account.

6    <u>Overt Act No. 49</u>:

7        On or about August 13, 2009, defendant VAHE DISCHIAN

8    obtained approximately $296,000 in cash from the CI that had been

9    accumulated by cashing checks drawn on the Genassist Inc.

10   checking account of East West Bank.

11                      <u>SN Tuma Inc.</u>

12   <u>Overt Act No. 50</u>:

13       On or about March 9, 2009, an unidentified coconspirator

14   opened a bank account at Wells Fargo Bank in the names of S.N.

15   and SN Tuma Inc.

16   <u>Overt Act No. 51</u>:

17       On or about May 5, 2009, an unidentified coconspirator

18   submitted and caused to be submitted a claim to Medicare for

19   services purportedly performed on March 11, 2009 by SN Tuma Inc.

20   for R.A.

21   <u>Overt Act No. 52</u>:

22       On or about June 17, 2009, an unidentified coconspirator

23   submitted or caused to be submitted a Medicare Enrollment

24   Application to Medicare under the name of S.N.T., M.D. dba SN

25   Tuma Inc.

26   <u>Overt Act No. 53</u>:

27       On or about October 12, 2009, an unidentified coconspirator

28   submitted and caused to be submitted a claim to Medicare for

16

services purportedly performed on July 6, 2009 by SN Tuma dba Fertility & Surgical Medical Associates of California Inc. for R.G.

Overt Act No. 54:

On or about October 26, 2009, defendant VACHAGAN DISHCHIAN spoke to the CI over the telephone to arrange a meeting with defendant HAROUT DISHCHIAN to deliver checkbooks from the SN Tuma Inc. checking account at Wells Fargo Bank.

Overt Act No. 55:

On or about October 26, 2009, defendant HAROUT DISHCHIAN met in person with the CI and delivered to the CI a checkbook for the SN Tuma Inc. checking account at Wells Fargo Bank.

Overt Act No. 56:

On or about October 27, 2009, defendant VACHAGAN DISHCHIAN spoke with the CI on the telephone and instructed the CI to write checks totaling $125,000 from the SN Tuma Inc. Wells Fargo Bank checking account.

Overt Act No. 57:

On or about November 10, 2009, defendant POGOS SATAMYAN obtained approximately $128,000 in cash from the CI, which represented the proceeds of checks cashed from the Wells Fargo Bank checking account of SN Tuma Inc.

Comptonmed, Inc.

Overt Act No. 58:

On or about June 23, 2009, an unidentified coconspirator submitted or caused to be submitted a Medicare Enrollment Application to Medicare under the name of N.D.D. dba Comptonmed, Inc.

17

<u>Overt Act No. 59</u>:

On or about October 6, 2009, an unidentified coconspirator submitted and caused to be submitted a claim to Medicare for services purportedly performed on July 1, 2009 by Comptonmed, Inc. for R.G.

<u>Overt Act No. 60</u>:

On or about November 5, 2009, defendant POGOS SATAMYAN met in person with the CI and gave the CI check no. 1079 from the Bank of America checking account in the name of Comptonmed, Inc.

<u>Overt Act No. 61</u>:

On or about November 5, 2009, defendant POGOS SATAMYAN met in person with the CI and gave the CI check no. 1080 from the Bank of America checking account in the name of Comptonmed, Inc.

<u>Overt Act No. 62</u>:

On or about November 5, 2009, defendant POGOS SATAMYAN met in person with the CI and gave the CI check no. 1081 from the Bank of America checking account in the name of Comptonmed, Inc.

<u>Overt Act No. 63</u>:

On or about November 6, 2009, defendant POGOS SATAMYAN met in person with the CI and gave the CI check no. 1084 from the Bank of America checking account in the name of Comptonmed, Inc.

COUNT TWO

[18 U.S.C. § 1956(h)]

28.   The Grand Jury repeats and re-alleges all of the allegations set forth above in paragraphs 1 through 15 and 17 through 27, inclusive, of this Indictment.

I.   OBJECT OF THE CONSPIRACY

29.   Beginning on a date unknown to the Grand Jury, and continuing through on or about October 13, 2010, in Los Angeles County, within the Central District of California, and elsewhere, defendants POGOS SATAMYAN, VACHAGAN DISHCHIAN, VAHE DISCHIAN, HAROUT DISHCHIAN, ANDY SATAMYAN, CANDU, SHCHERBYAK, AGISHEV, and others known and unknown to the Grand Jury (collectively "defendants"), knowingly combined, conspired, and agreed to commit an offense against the United States, namely, to knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, health care fraud, committed in violation of Title 18, United States Code, Section 1347, and bank fraud, committed in violation of Title 18, United States Code, Section 1344, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of the specified unlawful activity, and that while conducting and attempting to conduct such a financial transaction, defendants knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, in violation of Title 18 United States Code, Section 1956(a)(1)(B)(i).

19

II.  <u>MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE</u>
     <u>ACCOMPLISHED</u>

     30.  The object of the conspiracy was to be accomplished in
substance as follows:

     The manner and means alleged in Count One of this
Indictment, as set forth at paragraphs 17 through 26, inclusive,
are incorporated herein by reference and alleged as the means of
this Count.

III. <u>OVERT ACTS</u>

     31.  In furtherance of the conspiracy, and to accomplish its
object, defendants SATAMYAN, VACHAGAN DISHCHIAN, VAHE DISCHIAN,
HAROUT DISHCHIAN, ANDY SATAMYAN, CANDU, SHCHERBYAK, AGISHEV,
together with others known and unknown to the Grand Jury,
committed, caused to be committed, and aided in the commission of
the following overt acts within the Central District of
California and elsewhere:

     The overt acts alleged in Count One of this Indictment, as
set forth at paragraph 27, are incorporated herein by reference
and are alleged as overt acts 1 through 63 of this Count.

20

COUNTS THREE THROUGH SIX

[18 U.S.C. § 1956(a)(1)(B)(i)]

32.   The Grand Jury repeats and re-alleges all of the allegations set forth above in paragraphs 1 through 27, inclusive, of this Indictment.

33.   On or about the following dates, in Los Angeles County, within the Central District of California, and elsewhere, the defendants set forth below, and others known and unknown to the Grand Jury, knowing that the property involved in each of the financial transactions described below represented the proceeds of some form of unlawful activity, conducted and attempted to conduct, and willfully caused others to conduct and attempt to conduct, the following financial transactions affecting interstate commerce, which transactions, in fact, involved the proceeds of specified unlawful activity, namely health care fraud and bank fraud, knowing that each of the transactions was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of such specified unlawful activity:

| COUNT | DATE | FINANCIAL TRANSACTION |
|---|---|---|
| THREE | 3/3/2009 | Defendant ANDY SATAMYAN received approximately $104,000 in cash from the CI which represented the proceeds of counterfeited and forged checks that had previously been given to the CI to be cashed. |
| FOUR | 3/26/2009 | Defendant POGOS SATAMYAN received approximately $155,000 in cash from the CI which represented the proceeds of counterfeited and forged checks that had previously been given to the CI to be cashed. |

21

FIVE        7/9/2009        Defendant VACHAGAN DISHCHIAN received
                            approximately $25,000 in cash from the
                            CI which represented the proceeds of
                            counterfeited and forged checks that
                            had previously been given to the  CI
                            to be cashed.

SIX         8/13/2009       Defendant VAHE DISCHIAN received
                            approximately $296,000 in cash from
                            the CI which represented the proceeds
                            of counterfeited and forged checks
                            that had previously been given to the
                            CI to be cashed.

COUNTS SEVEN AND EIGHT

[18 U.S.C. § 1956(a)(3)(B)]

34. The Grand Jury repeats and re-alleges all of the allegations set forth above in paragraphs 1 through 27, inclusive, of this Indictment.

35. On or about the following dates, in Los Angeles County, within the Central District of California, defendant POGOS SATAMYAN, with the intent to conceal and disguise the nature, location, source, ownership, and control of property believed to be the proceeds of specified unlawful activity, namely, the felonious importation, receiving, buying, selling and otherwise dealing in controlled substances punishable under a law of the United States ("drug trafficking"), did knowingly conduct and attempt to conduct the financial transactions set forth below, affecting interstate and foreign commerce, involving property represented by an authorized agent of the United States government to be proceeds of specified unlawful activity, that is, drug trafficking:

| COUNT | DATE | FINANCIAL TRANSACTION |
| --- | --- | --- |
| SEVEN | 11/10/2009 | Receipt of approximately $128,000 in cash represented to be proceeds of drug trafficking which defendant POGOS SATAMYAN received in exchange for counterfeited and forged checks that had previously been given to the CI to be cashed. |
| EIGHT | 11/18/2009 | Receipt of approximately $733,000 in cash represented to be proceeds of drug trafficking which defendant POGOS SATAMYAN received in exchange for counterfeited and forged checks that had previously been given to the CI to be cashed. |

23

COUNTS NINE AND TEN

[18 U.S.C. §§ 1344(1), 2(b)]

36. The Grand Jury repeats and re-alleges all of the allegations set forth above in paragraphs 1 through 27, inclusive, of this Indictment.

A.    THE SCHEME TO DEFRAUD

37. Beginning on a date unknown to the Grand Jury, and continuing through on or about October 22, 2008, in Los Angeles County, within the Central District of California, and elsewhere, defendant POGOS SATAMYAN, and others known and unknown to the Grand Jury, knowingly and with intent to defraud, executed and attempted to execute a scheme to defraud Bank of America as to material matters.

B.    THE EXECUTION OF THE SCHEME TO DEFRAUD

38. On or about the following dates, within the Central District of California and elsewhere, defendant POGOS SATAMYAN committed and willfully caused others to commit the following acts, each of which constituted an execution and attempted execution of the fraudulent scheme:

| COUNT | DATE | ACT |
|-------|------|-----|
| NINE | 9/25/2008 | Delivered checks from the Bank of America account in the name of T.F.B. to a confidential informant working on behalf of the Federal Bureau of Investigation (the "CI"), knowing that the checks were counterfeited and forged, and directed the CI to cash two checks |
| TEN | 10/15/2008 | Telephoned the CI and directed the CI to cash one or more of the previously delivered checks from the Bank of America account in the name of T.F.B. |

COUNTS ELEVEN AND TWELVE

[18 U.S.C. §§ 1344(1), 2(b)]

39.  The Grand Jury repeats and re-alleges all of the allegations set forth above in paragraphs 1 through 27, inclusive, of this Indictment.

A.   THE SCHEME TO DEFRAUD

40.  Beginning on a date unknown to the Grand Jury, and continuing through on or about November 3, 2009, in Los Angeles County, within the Central District of California, and elsewhere, the defendants set forth below, and others known and unknown to the Grand Jury, knowingly and with intent to defraud, executed and attempted to execute a scheme to defraud Wells Fargo Bank as to material matters.

B.   THE EXECUTION OF THE SCHEME

41.  On or about the following dates, within the Central District of California and elsewhere, defendant VACHAGAN DISHCHIAN and defendant HAROUTYOUN DISHCHIAN committed and willfully caused others to commit the following acts, each of which constituted an execution and attempted execution of the fraudulent scheme:

| COUNT | DATE | ACT |
|---|---|---|
| ELEVEN | 10/26/2009 | Defendant HAROUTYOUN DISHCHIAN delivered checks from the Wells Fargo Bank account in the name of SN Tuma Inc. to a confidential informant working on behalf of the Federal Bureau of Investigation (the "CI"), knowing that the checks were counterfeited and forged |
| TWELVE | 10/27/2009 | Defendant VACHAGAN DISHCHIAN telephoned the CI and directed the CI to cash one or more of the previously delivered checks from the Wells Fargo Bank account in the name of SN Tuma Inc. knowing that the checks were counterfeited and forged |

COUNTS THIRTEEN AND FOURTEEN

[18 U.S.C. § 1028A(a)(1)]

42.  The Grand Jury repeats and re-alleges all of the allegations set forth above in paragraphs 1 through 27, inclusive, of this Indictment.

43.  On or about the dates set forth below, in Los Angeles County, within the Central District of California, and elsewhere, defendant POGOS SATAMYAN knowingly transferred, possessed, and used, without lawful authority, a means of identification of another person, that is, the name of T.F.B., during and in relation to bank fraud, a felony violation of Title 18, United States Code, Section 1344(1), as charged in Counts Nine and Ten of this Indictment.

| COUNT | DATE | VICTIM |
| --- | --- | --- |
| THIRTEEN | 10/16/2008 | T.F.B. |
| FOURTEEN | 10/22/2008 | T.F.B. |

COUNTS FIFTEEN AND SIXTEEN

[18 U.S.C. § 1028A(a)(1)]

44.   The Grand Jury repeats and re-alleges all of the allegations set forth above in paragraphs 1 through 27, inclusive, of this Indictment.

45.   On or about the dates set forth below, in Los Angeles County, within the Central District of California, and elsewhere, defendant HAROUTYOUN DISHCHIAN, also known as "Harout," knowingly transferred, possessed, and used, without lawful authority, a means of identification of another person, that is, the name of S.N.T., during and in relation to bank fraud, a felony violation of Title 18, United States Code, Section 1344(1), as charged in Counts Eleven and Twelve of this Indictment.

| COUNT   | DATE       | VICTIM |
|---------|------------|--------|
| FIFTEEN | 10/26/2009 | S.N.T. |
| SIXTEEN | 10/26/2009 | S.N.T. |

FORFEITURE ALLEGATION

[28 U.S.C. § 2461(c); 18 U.S.C. § 981(a)(1)(C);

18 U.S.C. § 982; and 21 U.S.C. § 853]

46.  The allegations contained in Counts One through Sixteen of this Indictment are hereby incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture pursuant to the provisions of Title 28, United States Code, Section 2461(c), Title 18 United States Code, Sections 981(a)(1)(C) and 982, and Title 21, United States Code, Section 853.

47.  Pursuant to Title 28, United States Code, Section 2461(c), Title 18 United States Code, Sections 981(a)(1)(C) and 982, and Title 21, United States Code, Section 853, a defendant, if convicted of any of the offenses charged in Counts One through Sixteen of this Indictment, shall forfeit to the United States the following property:

a.  All right, title, and interest to any and all property, real and personal, which constitutes or is derived from proceeds traceable to such offense, or that was involved in such offenses;

b.  A sum of money equal to the total amount of proceeds derived from each such offense for which defendant is convicted.

48.  Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), a defendant, if so convicted, shall forfeit substitute property, up to the total value of the property described in paragraph 47, if, by any act or omission of defendant, the

28

property described in paragraph 47, or any portion thereof, (a)
cannot be located upon the exercise of due diligence; (b) has
been transferred or sold to, or deposited with, a third party;
(c) has been placed beyond the jurisdiction of the court; (d) has
been substantially diminished in value; or (e) has been
commingled with other property that cannot be divided without
difficulty.

A TRUE BILL

/S/
Foreperson

ANDRÉ BIROTTE JR.
United States Attorney

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division

WESLEY L. HSU
Assistant United States Attorney
Chief, Cyber & Intellectual Property Crimes Section

MARK C. KRAUSE
Assistant United States Attorney
Deputy Chief, Cyber & Intellectual Property Crimes Section

CRAIG H. MISSAKIAN
Assistant United States Attorney
Cyber & Intellectual Property Crimes Section